UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SAMUEL M. LEVINE,

        Plaintiff,

        v.                     **MEMORANDUM & ORDER**
                                        03-CV-6420 (DRH) (ETB)
EDWARD F. McCABE, and
JONATHAN LIPPMAN,

        Defendants.
-----------------------------------------------------------X
A P P E A R A N C E S

**SAMUEL LEVINE**
Plaintiff Pro Se
711 Shore Road (2-E)
Long Beach, New York 11561

**OFFICE OF COURT ADMINISTRATION FOR THE STATE OF NEW YORK**
Attorneys for Defendants
Agency Building 4, 20th floor
Empire State Plaza
Albany, NY 12223
By: John Joseph Sullivan, Esq.

**OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK**
Attorneys for Defendants
300 Motor Parkway
Hauppauge, New York 11788
By: Susan M. Connolly, Esq.

**HURLEY, Senior District Judge:**

*Introduction*

       Plaintiff Samuel Levine, a retired Nassau County district judge, has brought the present

suit against Defendants Jonathan Lippman, Chief Administrative Judge for the New York State

Unified Court System, and Edward G. McCabe, the Administrative Judge of the courts of Nassau

County. Levine alleges that Defendants' refusal to appoint him "judicial hearing officer," violated the First Amendment and Title VII. Defendants now move to dismiss Levine's Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. Levine opposed the motion and brought a cross-motion to submit a Second Amended Complaint. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part and Levine's motion to amend is DENIED.

*Background*

The following summary of the facts is drawn from the Court's February 23, 2005 Memorandum and Order, and the most recent submissions by the parties. According to Levine's complaint and the documents attached thereto, Levine has been a practicing attorney in New York since 1950. He has been described as a "gadfly" and a champion of "seemingly hopeless causes." In 1996 he was elected to a term as a Nassau County district court judge for the county's "First District," and as such, apparently automatically became the "President of the Board of Judges" or the "presiding judge" of the Nassau County district courts. The New York Times described Levine as "a perennial Democratic also-ran in predominantly Republican Nassau county," and his election was apparently something of an upset. Levine states that as presiding judge of the Nassau County district courts, he was supposed to be "in charge of the daily operation and administration of the District Court subject to the control and reporting to Defendant McCabe." But according to Levine, McCabe, as a Republican, maneuvered to keep all power and authority in his own hands. Levine also insists that McCabe "ignored and failed to act on many serious problems in the District Court set forth [in] Levine['s] reports and

recommendations," and made efforts to prevent Levine from presiding over a politically-charged case. McCabe's motives, insists Levine, were "political retaliation and prejudice" against him.

On December 31, 1999, having apparently reached the age of 70, Levine retired pursuant to the New York Constitution's mandatory judicial retirement provision.[1] Shortly prior to his retirement, Levine applied to be designated as a judicial hearing officer, pursuant to the provisions of the New York Judiciary Law. According to Levine, he satisfied the statutory and regulatory requirements, in that he was "well qualified" to be a judicial hearing officer, and his application included an "extraordinary array of supporting documentation" to prove it.

On January 26, 2000, Levine was interviewed by the judicial hearing officer selection advisory committee appointed by Lippman for Nassau County. Levine believes that the committee received and reviewed a report from McCabe recommending that his application be denied, and that the committee recommended the same. In a letter dated March 9, 2000, Lippman informed Levine that his application had been denied. Levine's immediate request for reconsideration of that decision was denied in a subsequent letter from Lippman, dated March 30, 2000. Levine asserts that he was "denied the right and opportunity to receive a copy of [McCabe's] negative report and recommendations," that the Defendants "failed to submit or serve [him with] any written charges or complaints concerning his conduct or services or other facts impacting on the questions of competence, work ethic, experience or judicial temperament," and that he was "denied notice of any such charges or complaints."

---

[1]The New York Constitution, Article VI, § 25, subdivision b states in relevant part: "Each . . . judge of the district court shall retire on the last day of December in the year in which he or she reaches the age of seventy."

3

On June 30, 2001, Levine submitted a new application to be a judicial hearing officer, this time in Queens County. This application was denied as well, but without any further interview or hearing.

On December 23, 2003, Levine filed the present suit pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment that New York's statutory scheme for appointment of judicial hearing officers is unconstitutional, a declaratory judgment that the Defendants violated various types of his civil rights, as well as $1,200,000 in money damages and $300,000 in costs and fees from Defendants. Defendants moved to dismiss the suit, on the grounds that Levine's Complaint brought claims barred by the applicable statute of limitations, and because Levine had failed to state equal protection and due process claims.

In a February 23, 2005 Memorandum and Order, this Court dismissed, as time-barred, all claims relating to the denial of Levine's first application. The Court similarly dismissed all of Levine's claims asserting equal protection and due process violations. The Court thus dismissed the Complaint in its entirety, but nevertheless granted Levine leave to amend his Complaint because the allegations regarding his second application were not barred by the statute of limitations. (*See* Feb. 23, 2005 Mem. & Order, at 12.) The Court granted leave to submit an amended complaint with respect to Levine's claim that his second application for appointment as a judicial hearing officer was denied as a result of political retaliation. The Court noted that an employment retaliation claim cannot be raised under the Equal Protection Clause, although it may properly be brought pursuant to the First Amendment or Title VII. (*Id.* at 24.)

Thereafter, Defendant submitted an Amended Complaint, alleging that the denial of his application for appointment as a judicial hearing officer violated his civil rights pursuant to 42

4

U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e, *et seq.* Defendants now move to dismiss the Amended Complaint, again for failure to state a claim pursuant to Rule 12(b)(6). Levine opposes the motion in his "Memorandum of Law for Second Amended Complaint," which poses arguments both in opposition to Defendants' motion and in support of his motion to submit a Second Amended Complaint. Defendants submitted a letter-brief dated May 16, 2006, in reply to Levine's submissions.

*Discussion*

I. *Motion to Dismiss*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief in support of his claim. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). The issue is not how likely the plaintiff is to ultimately prevail, but whether he is entitled to even offer evidence to support his claims. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976) (per curiam) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

5

These standards apply with particular strictness where, as here, the complaint alleges civil rights violations. *Cleveland v. Caplaw Enters.*, 448 F.3d at 521.

Nevertheless, although a court must accept the facts alleged in the non-movant's complaint, "conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994). "[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977)). And although Courts also must normally construe pro se complaints liberally, *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000), practicing attorneys who choose to represent themselves cannot claim the special considerations normally afforded to pro se litigants. *Harbulak v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981).

### A. Statute of Limitations

Defendants argue that Levine's first cause of action, a § 1983 claim, is time-barred under the three-year statute of limitations that governs § 1983 claims brought in New York. Levine's counter is two-fold: (1) "Levine submits that the violations of the constitution . . . far transcend and are of greater importance and priority than the personal injury action with a three-year limitation"; and (2) "The three-year rule should not apply when the acts complained of are continuous acts." (Pl.'s Mem. of Law for 2d Am. Compl. ¶ 21.) The first argument is unelaborated, unsupported by any citation, and at odds with years of well-established case law. *See, e.g., Owens v. Okure,* 488 U.S. 235, 250-51 (1989); *Pinaud v. County of Suffolk,* 52 F.3d

6

1139, 1156 (2d Cir. 1995). The second argument, addressed in the first opinion, will be addressed again herein. (*See* Feb. 23, 2005 Mem. & Order at 9-10.)

It is well-established and "beyond the cavil" that in New York, § 1983 actions must be filed within three years of the date on which the plaintiff becomes aware of an alleged injury. *See Pinaud*, 52 F.3d at 1156. In the Feb. 23, 2005 Order, the Court addressed Defendants argument that "Levine's complaint does not allege any constitutional violations whatsoever within the statutory limitations period, and should be dismissed in its entirety." (*See* Feb. 23, 2005 Order at 11.) The Court disagreed with Defendants on this point, however, noting that "in light of the rule that complaints, particularly complaints alleging civil rights violations, must be read liberally at the dismissal stage, with all reasonable inferences drawn in favor of the plaintiff." (*Id.*) Because Levine had filed his complaint in December 23, 2003, the Court ruled that "Levine's complaint is not time-barred insofar as it alleges that the rejection of his December 2001 application was unconstitutional," because that event occurred with the three-year statute of limitations period.

On the present motion, Defendants renew their statute of limitations argument. Defendants assert that the December 2001 denial of the second application is not the relevant discriminatory act, rather it is merely an effect of the act. Defendants argue that "[w]hat plaintiff is actually asserting as the unconstitutional retaliatory act is not the denial of his second application by Judge Lippman in 2001, but the negative recommendation made by Judge McCabe sometime between October, 1999, and March, 2000, when plaintiff's first application was made and denied." (Defs.' Mem. at 7.) Pursuant to the three-year limitation, any claim accruing occurring prior to December 23, 2000, would be time-barred. If the last alleged

7

discriminatory act was in March 2000, then those acts would be barred. Levine does not offer a response to these arguments.

In the Amended Complaint, Levine alleged, "Upon information and belief, Defendant LIPPMAN DENIED this 2001 application based on the 1999 report and recommendation of Defendant McCABE." (Am. Compl. ¶ 19.) The allegation is that the denial of the 2001 application by Defendant Lippman is an allegedly discriminatory act. There is no suggestion that Defendant Lippman was duty-bound to deny the application based upon the 1999 report and recommendation. Therefore, the denial of the 2001 application is alleged to be a discriminatory act, in itself, rather than a mere effect of the "actual" discriminatory act in 1999. Consequently, Defendants motion to dismiss the claim on statute of limitation grounds, as it applies to Defendant Lippman, is denied.

A question remains regarding the retaliation claim as it pertains to Defendant McCabe. The alleged retaliatory act was the 1999 report and recommendation. That act occurred some five years before the filing of the present suit and is time-barred. There is a relevant modification to the time-limitation on § 1983 claims, however: the "continuing violation" doctrine, which "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997). Under the doctrine, "each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with its occurrence," *id.* at 119 (quotation omitted), but the plaintiff may recover for injuries sustained before the limitations period as well. *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978). However, the doctrine cannot be applied "merely

because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

The continuing violation doctrine is heavily disfavored in the Second Circuit. *See Falinski v. Kuntz*, 38 F. Supp.2d 250, 257 (S.D.N.Y. 1999) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.' ") (internal citation omitted). In employment discrimination cases, the Supreme Court has stated that "discrete discriminatory acts" are not covered by the continuing violation doctrine, and "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Refusals to hire are considered discrete acts, *id.* at 114, and the continuing violation doctrine is generally inapplicable in discriminatory hiring cases. *See Purdy v. Town of Greenburgh*, 166 F. Supp.2d 850, 863 (S.D.N.Y. 2001); and *Wilkins v. New York City Dep't of Prob.*, 2001 WL 262601 (S.D.N.Y. 2001) (internal citations omitted). The rationale behind the "discrete act" rule is that when a plaintiff is harmed by a discrete act or event, he should be aware of it; "[t]o permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

Turning again to the same language in the Amended Complaint, there is no reason to consider the independent act of Defendant Lippman's rejection in 2001 as a mere continuance of the discriminatory act of Defendant McCabe's report and recommendation in 1999. (*See* Am. Compl. ¶ 18.) According to the Amended Complaint, "The Advisory Committee thereupon

followed Defendant McCABE'S Recommendation and recommended Denial of the Plaintiff's Judicial Hearing Officer application to Defendant LIPPMAN." (Am. Compl. ¶ 11.)

There is no indication that the 1999 report and recommendation mandated the 2001 denial. Rather, the allegation is that the recommendation was taken into consideration by the Advisory Committee, which made its own, independent recommendation to Defendant Lippman, who in turn made his own independent determination. Even if these recommendations were "routinely rubber-stamp[ed]," the allegedly discriminatory acts were nevertheless discrete. Furthermore, perusing the Amended Complaint, there is no allegation of any specific act committed by Defendant McCabe after the 1999 report and recommendation. As a result, a claim based upon the 1999 report and recommendation is time-barred and the § 1983 claim against Defendant McCabe is hereby dismissed.

In sum, the claim against Defendant Lippman is not time-barred but the claim against Defendant McCabe is. Accordingly, the Court grants the motion to dismiss the claim as to Defendant McCabe, but denies the motion as to Defendant Lippman.

B.  *First Amendment Claim*

Defendants move to dismiss the first cause of action as it pertains to the First Amendment on the ground that "although it is a general rule that it is constitutionally impermissible to consider political affiliation when making an appointment, judicial officers have been recognized as coming within the ambit of the 'policymaker' exception to that rule." (Defs.' Mem. at 17.) Levine offers little response to this argument, save the conclusory argument that his "conduct of free speech in report on problem in the District Court of Nassau County, was protected by the First Amendment." (Pl.'s Mem. of Law for 2d Am. Compl. ¶ 31.)

Defendants' motion is premised upon the assertion that judicial officers are "policymakers" (Def.'s Mem. at 13 (citing cases)), and, as such, the claim must be dismissed. The Supreme Court has ruled that the First Amendment permits dismissals of policymakers because of their political affiliation, when the employer can establish that party affiliation is an appropriate requirement for the effective performance of the public office involved. *See McEvoy v. Spencer*, 124 F.3d 92, 98 (2d Cir. 1997) (citing *Branti v. Finkel*, 445 U.S. 507, 518 (1980)).

Whether a person is a policymaker is a question of law. *See Gordon v. County of Rockland*, 110 F.3d 886, 888-89 (2d Cir. 1997); *Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2d Cir. 1998). The Second Circuit Court of Appeals has clarified the policymaker inquiry by identifying eight pertinent factors, including:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of the policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir.1994). On the other hand, these factors are not "an exhaustive list of indicators, nor is any one factor or group of them always dispositive." *Id.* at 486. Moreover, the job description, or what the employee could do, rather than job performance, or what the employee actually does, controls the analysis. *See Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir.1993) (looking to the town code to determine the powers with which the plaintiff is vested by law); *Savage v. Gorski*, 850 F.2d 64, 66 (2d Cir.1988) (looking to the job description).

The difficulty in determining the validity of Defendants' motion at this juncture is that Defendants fail to discuss any of the above factors. Rather, Defendants rely upon a string of

11

Sixth Circuit opinions that have held that various types of judges are "policymakers." (Defs.' Mem. at 13.) Though Defendants assert that "an Ohio Domestic Relations Court referee [is] a judicial appointee whose power and duties are quite similar to those of a judicial hearing officer" (*Id*. at 15), hoping to reap the benefit of a Sixth Circuit opinion, Defendants have not submitted an Answer that asserts the specific duties of a judicial hearing officer. Similarly, nowhere the in Amended Complaint does Levine address this issue.

As a result, though the question of whether a judicial hearing officer is a "policymaker" is ultimately a matter of law, it is still a fact-specific inquiry. And, to that end, the parties have failed to provide the Court with any facts, by way of allegation or proof, that would merit a decision either way. *See Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242 (1st Cir. 1986) (en banc) ("[The] court's function, it seems to us, is to do what courts are often called upon to do – to weigh all relevant factors and make a common sense judgment in light of the fundamental purpose to be served."), *quoted in Gordon*, 110 F.3d at 889 (noting that the policymaker inquiry involves a fact-specific inquiry, which should be distinguished from an issue of fact). Accordingly, Defendants' motion to dismiss the First Amendment claim is denied without prejudice.

### C. *Title VII Claim*

Finally, Defendants move to dismiss the second cause of action, the Title VII claim for three reasons: (1) Levine failed to raise the claim before the Equal Employment Opportunity Commission ("EEOC"); (2) Levine failed to establish a prima facie retaliation claim; and (3) Defendants cannot be individually liable. Because the first argument is dispositive, it is the only one addressed herein.

The presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court. *Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000). Nevertheless, "it remains the case that exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." *Id.* at 768. In the present case, there is no indication that Levine filed any charge with the EEOC. There is nothing in the Amended Complaint that mentions an EEOC charge, nor is there any attached copy of said charge. Furthermore, Defendants have not waived the filing requirement. (*See* Defs.' Mem. at 18.) As a result, Levine's Title VII claim must fail, and the Court grants Defendants' motion to dismiss the Title VII claim.

## II. Motion for Leave to Amend

Levine has indicated that he seeks to file a Second Amended Complaint ("SAC"), a copy of which he has provided to this Court. It appears that he has not added new claims or new parties, however, but rather simply alleges additional discriminatory acts to support his initial claims.

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint, even following dismissal, is generally "freely given. Nonetheless, a motion to amend should be denied "if there is an 'apparent or declared reason – such as [1] undue delay, [2] bad faith or dilatory motive . . . , [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of the allowance of the amendment, [or (5)] futility of amendment.'" *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision of whether to

allow a party to amend his complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979).

The Court need not address all five factors, because it is clear that the proposed amendments would be futile. As stated *supra*, any acts that occurred before December 23, 2000 are time-barred. The proposed SAC makes a series of allegations regarding a retaliatory act that occurred in or around 1996. (SAC ¶¶ 24(a)-(c).) These alleged acts of discrimination are clearly time-barred and amendment would be futile.

The other new material in Levine's proposed SAC appears in a section captioned "Politics and Traffic Court Judicial Hearing Officers." (*Id.* ¶¶ 31(a)-(f).) Therein, Levine alleges that he has been deprived of an appointment to the Nassau County Traffic and Parking Violation Agency ("TPVA") since he first applied for the position in January 1, 2000. This deprivation allegedly emanates from the initial act of depriving Levine of the appointment to Judicial Hearing Officer. As the proposed SAC states, "Judicial Hearing Officers (JHO) were required to be appointed to the [TPVA] pursuant to the New York Vehicle and Traffic Law Section 1690 and the JHO statute and rules." (*Id* ¶ 31(a).)

Defendants oppose leave to amend, raising only the argument that amendment would be futile. (*See* Defs.' May 16, 2006 Letter.) According to Defendants, as a matter of law they had no authority to appoint Levine to the TVPA position. (*Id.* at 5-6.) Levine does not provide any response to these arguments.

The proposed SAC alleges that "[t]he basic requirement for a retired JHO to be appointed to the TPVA is that the chairman of the Republic Party must make a recommendation to the Chief Administrative Judge (Defendant McCABE) who in turn would make the recommendation to Defendant LIPPMAN. He would routinely rubber-stamp and approve McCABE's appointments." (SAC ¶ 31(d).) According to Defendants, this characterization of the TPVA appointment process is at odds with both reality and law. Defendants cite to Title A of Chapter 24 of the Nassau County Administrative Code, which provides that "there shall be a department of the Nassau County government known as the Nassau County Traffic and Parking Violations Agency, which shall operate under the control and direction of the County Executive." Nassau County Administrative Code, § 24-1.1, *available at* http://www.nassaucountyny.gov/website/GenericServices/docs/NassauCountyAdminCode_Jan2006.pdf. Defendants also reference the June 2, 2003 Legislative Calendar, submitted by Levine with his June 14, 2004 Opposition to the Motion to Dismiss, which indicates that the Nassau County Executive is responsible for making appointments to the TPVA. (*See* Defs.' May 16, 2006 Letter at 6 (citing Pl.'s Affirm. to Oppose Mot. to Dismiss, dated June 14, 2004, Ex. 15).)

The County Administrative Code indicates that Defendant Lippman, the Chief Administrative Judge for the Unified Court System of New York, has no authority over the appointments to the TVPA. Furthermore, the Code puts the authority entirely in the hands of the County Executive, rather than any County judicial authorities, like Defendant McCabe. Thus, neither Defendant Lippman nor McCabe had any authority to grant or deny the position to Levine. Plaintiff does not proffer any argument or allegation in response to counter Defendants' assertions.

15

Because Defendants did not have any authority pursuant to statute to deprive Levine of the position of which he claims to have been deprived, they could not have refused to appointment him. Accordingly, amendment to bring a claim against Defendants regarding Levine's non-appointment to the TVPA would be futile as it must fail as a matter of law.

*Conclusion*

In sum, the Court GRANTS Defendants' motion to dismiss the § 1983 claim against Defendant McCabe and the Title VII claim in its entirety. The Court DENIES, however, Defendants' motion to dismiss the § 1983 claim as against Defendant Lippman. The Court further DENIES Levine's motion for leave to submit the proposed SAC.

**SO ORDERED.**

Dated:     Central Islip, New York                /s/
           September 19, 2006                     Denis R. Hurley
                                                  United States Senior District Judge