UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SAMUEL M. LEVINE,

                              Plaintiff,

                v.                                 **MEMORANDUM & ORDER**
                                                              03-CV-6420 (DRH) (ETB)

EDWARD F. McCABE, and
JONATHAN LIPPMAN,

                              Defendants.
----------------------------------------------------------X

**A P P E A R A N C E S**

**SAMUEL LEVINE, ESQ.**
Plaintiff Pro Se
711 Shore Road (2-E)
Long Beach, New York 11561

**MICHAEL COLODNER**
**OFFICE OF COURT ADMINISTRATION FOR THE STATE OF NEW YORK**
Attorneys for Defendants
Empire State Plaza
4ESP, Suite 2001
Albany, NY 12223
By: John Joseph Sullivan, Esq

**ANDREW CUOMO**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
Attorneys for Defendants
300 Motor Parkway, Suite 205
Hauppauge, New York 11788
By: Susan M. Connolly, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Samuel Levine ("Plaintiff" or "Levine"), a retired Nassau County District Judge,

brought the present suit against Defendants Jonathan Lippman ("Lippman"), Chief

Administrative Judge for the New York State Unified Court System, and Edward G. McCabe ("McCabe")[1], the Administrative Judge of the Courts of Nassau County, alleging that Defendants' refusal to appoint him "judicial hearing officer," violated the First Amendment and Title VII. By Memorandum and Order dated September 19, 2006, familiarity with which shall be presumed, the Court granted Defendants' motion to dismiss the § 1983 claim against Defendant McCabe and the Title VII claim in its entirety but denied Defendants' motion to dismiss the § 1983 as against Defendant Lippman. The Court also denied Levine's motion for leave to leave to file his proposed Second Amended Complaint ("SAC"). Presently before the Court are two motions. One motion is by Levine and seeks renewal and reconsideration of the motion for leave to serve the proposed SAC and the dismissal of the claims against McCabe. The other motion is by Defendants for summary judgment. For the reasons that follow, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

*Background*

The following summary of the facts is drawn from the Court's September 19, 2006 Memorandum and Order, and the most recent submissions by the parties. According to Levine's complaint and the documents attached thereto, Levine has been a practicing attorney in New York since 1950. In 1996 he was elected to a term as a Nassau County District Court Judge for the county's "First District," and as such, apparently automatically became the "President of the Board of Judges" or the "presiding judge" of the Nassau County District Courts. The New York Times described Levine as "a perennial Democratic also-ran in predominantly Republican

---

[1] Lippman and McCabe shall collectively be referred to as "Defendants."

Nassau County," and his election was apparently something of an upset. Levine states that as presiding judge of the Nassau County District Courts, he was supposed to be "in charge of the daily operation and administration of the District Court subject to the control and reporting to Defendant McCabe." But according to Levine, McCabe, as a Republican, maneuvered to keep all power and authority in his own hands. Levine also insists that McCabe "ignored and failed to act on many serious problems in the District Court set forth [in] Levine['s] reports and recommendations," and made efforts to prevent Levine from presiding over a politically-charged case. McCabe's motives, insists Levine, were "political retaliation and prejudice" against him.

On December 31, 1999, having apparently reached the age of 70, Levine retired pursuant to the New York Constitution's mandatory judicial retirement provision.[2] Shortly prior to his retirement, Levine applied to be designated as a judicial hearing officer ("JHO"), pursuant to the provisions of the New York Judiciary Law. According to Levine, he satisfied the statutory and regulatory requirements, in that he was "well qualified" to be a JHO, and his application included an "extraordinary array of supporting documentation" to prove it.

On January 26, 2000, Levine was interviewed by the judicial hearing officer selection advisory committee appointed by Lippman for Nassau County. Levine believes that the committee received and reviewed a report from McCabe recommending that his application be denied, and that the committee recommended the same. In a letter dated March 9, 2000, Lippman informed Levine that his application had been denied. Levine's immediate request for reconsideration of that decision was denied in a subsequent letter from Lippman, dated March

---

[2]The New York Constitution, Article VI, § 25(b) states in relevant part: "Each . . . judge of the district court shall retire on the last day of December in the year in which he or she reaches the age of seventy."

30, 2000. Levine asserts that he was "denied the right and opportunity to receive a copy of [McCabe's] negative report and recommendations," that the Defendants "failed to submit or serve [him with] any written charges or complaints concerning his conduct or services or other facts impacting on the questions of competence, work ethic, experience or judicial temperament," and that he was "denied notice of any such charges or complaints."

On June 30, 2001, Levine submitted a new application to be a JHO, this time in Queens County. This application was denied as well, but without any further interview or hearing.

On December 23, 2003, Levine filed the present suit pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment that New York's statutory scheme for appointment of judicial hearing officers is unconstitutional, a declaratory judgment that the Defendants violated various types of his civil rights, as well as $1,200,000 in money damages and $300,000 in costs and fees from Defendants. Defendants moved to dismiss the suit, on the grounds that Levine's Complaint brought claims barred by the applicable statute of limitations, and because Levine had failed to state equal protection and due process claims.

In a February 23, 2005 Memorandum and Order, this Court dismissed, as time-barred, the § 1983 claims relating to the denial of Levine's first application for appointment as a JHO. The Court further dismissed Levine's claims that New York's statutory scheme violated the equal protection and due process clauses of the U.S. Constitution. Having concluded Levine failed to state any timely and viable federal claim and declining to exercise supplemental jurisdiction over any potential remaining state law claims, the Court thus dismissed the Complaint in its entirety. However, Levine was granted leave to submit an amended complaint with respect to his claim that his second application for appointment as a JHO was denied as a result of political

retaliation. (*See* Feb. 23, 2005 Mem. & Order, at 12.)   The Court noted that an employment retaliation claim cannot be raised under the Equal Protection Clause, although it may properly be brought pursuant to the First Amendment or Title VII.  (*Id.* at 24.)

Thereafter, Levine submitted an Amended Complaint, alleging that the denial of his application for appointment as a JHO violated his civil rights pursuant to 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e, *et seq.*  Defendants moved to dismiss the Amended Complaint, again for failure to state a claim pursuant to Rule 12(b)(6).  Levine opposed the motion in his "Memorandum of Law for Second Amended Complaint," which posed arguments both in opposition to Defendants' motion and in support of his motion to submit a Second Amended Complaint.  In its September 19, 2006 Memorandum and Order, the Court granted the motion to dismiss the § 1983 claim against McCabe on the grounds it was barred by the statute of limitations but denied Lippman's motion for the same relief on the grounds that the Amended Complaint alleged that Lippman's denial of Levine's second application, submitted in 2001, was a discriminatory act.  Defendants' motion to dismiss Levine's First Amendment claims on the ground that a JHO is a policymaker was denied as the parties failed to provide the Court with any facts that would merit a decision either way. Further, the Court denied Levine's motion to amend his complaint to add a claim that he was deprived of a JHO appointment to the Nassau County Traffic and Parking Violations Agency, finding the proposed amendment would be futile as the Defendants did not have any authority to appoint him to that agency.

Defendants' current motion submits the following information regarding JHOs, which information is uncontested unless otherwise noted.

One who has served as a judge or justice of a court of record in New York State[3] or of a city court but no longer holds judicial office for reasons other than removal therefrom, may be designated by the chief administrator of the Courts as a JHO. N.Y. Judiciary Law §850(1). In designating a former judge as a JHO, the chief administrator must determine that the former judge has the mental and physical capability to perform the duties of the office and the services of the individual are necessary to expedite court business. *Id.* The chief administrator fixes the term of each JHO and may establish panels of JHOs for such courts or geographical areas as deemed appropriate and assignments of a JHO are to be made as required by the needs of the court and rules promulgated by the chief administrator. *Id*. at §§ 850(2), 851(1).

Pursuant to the Judiciary Law, the chief administrator has promulgated rules governing the appointment of JHOs. *See* 22 N.Y. Comp. Codes R. & Regs.("NYCRR") Part 122. Pursuant to these rules the chief administrator has discretion to designate an eligible applicant upon determining that the applicant "has the physical and mental capacity, competence, work ethic, experience and judicial temperament necessary to perform the duties of a judicial hearing officer, and is well qualified to serve on the panels in the court to which he or she will be designated." 22 NYCRR § 122.2(a). An applicant is required to pass a comprehensive physical by a physician designated by the chief administrator. 22 NYCRR § 122.2(b). The rules provide that in exercising his discretion, the chief administrator shall consult with the presiding justice of the appropriate appellate division, the appropriate local administrative judge, who submits a written

---

[3] Pursuant to the New York State Constitution, Supreme Court Justices, as well as County Court and District Court Judges are elected. *See* N.Y. Const. Art. 6, §§ 6, 10, 16.

evaluation of the applicant, and the appropriate JHO selection committee.[4] 22 NYCRR § 122.2(c). The chief administrator may also consult "other appropriate persons and bar associations," as well as conduct whatever investigation deemed necessary. 22 NYCRR § 122.2(d). Once approved, a JHO is appointed for a one year term, which may be extended for an additional year. 22 NYCRR § 122.3. Once appointed, the JHO joins the panel in the district in which s/he has been designated. 22 NYCRR § 122.5. Depending on the needs of the courts in the assigned district, the Administrative Judge for the District assigns JHOs from the panel to work in specific parts or on a case-by-case basis. 22 NYCRR § 122.6. The rules specifically provide that "nothing herein shall vest any person with any right to be designated as a judicial hearing officer." 22 NYCRR § 122.7.

The Judiciary Law leaves open the powers of a JHO by providing that they "shall have such powers as provided by law." *Id.* at § 853. Under New York law, JHOs serve in both criminal and civil matters.

---

[4] The chief administrator has established a number of JHO selection advisory committees to assist him in the designation of JHOs. Each committee has seven members appointed by the chief administrator. Three members are either current or former judges and the remaining four members are practicing attorneys. 22 NYCRR § 122.2(e)(1). The advisory committee interviews each applicant and may require the submission of additional information. The advisory committee is charged with evaluating the applicant's fitness to serve as a JHO, taking into account the applicant's competence, work ethic, experience and judicial temperament. In evaluating an applicant's competence, the committee considers effective case management and prompt case disposition, knowledge of the law and clarity of written opinions. As to work ethic, the committee considers punctuality, preparation and attentiveness and meeting commitments on time and according to the rules of court. Finally, with respect to experience and temperament, the committee considers the nature, length and proximity in time of judicial service and the ability to deal patiently with and be courteous to all parties and participants. 22 NYCRR § 122.2(f).

In criminal matters, JHOs function in three different ways. First, a local criminal court may, with the parties consent, assign a JHO to conduct the trial of most types of informations.[5] N.Y. Crim Pro. Law §350.20. When such an assignment is made, the JHO has "the same power as a judge of the court," including the power to issue sentences of imprisonment, and the JHO's actions are "deemed the action of the court." *Id*. at §§ 380.10, 350.20; New York Penal Law §§ 55.10, 70.15. Second, JHOs are authorized to preside over proceedings involving certain traffic and parking infractions in Nassau County even absent consent of the parties. *Id*. Third, a judge in any criminal court may assign pre-trial motions to a JHO. In connection therewith, the JHO may hold any necessary hearings. The JHO does not determine the motion but files a report setting forth findings of fact and conclusions of law and that report is considered by the court in ultimately determining the motion. N.Y. Crim Pro. Law § 255.20

Pursuant to the New York Civil Practice Law and Rules, JHOs are vested with the same powers and duties as referees. N.Y. C.P.L.R. 4301. In the civil arena, the powers of a JHO are determined by the order of reference and an order of reference requires the consent of the parties except in limited circumstances. Upon such consent of the parties, a JHO may be assigned by a judge "to determine the entire action or specific issues, to report issues, to perform particular acts, or to receive and report evidence only." C.P.L.R. 4311. The order of reference must specify what kind of reference it is, to wit: a reference to determine, a reference to report, a reference to perform a particular act or a reference to receive and report evidence. Where the order of

---

[5] An information is a verified accusatory instrument used to charge a person with one or more non-felony (i.e., misdemeanor, violation or traffic infraction) offenses. N.Y. Crim Pro. Law § 1.20(4). JHOs are not authorized to conduct trials of informations which contain at least one count which charges a Class A misdemeanor. *Id.* at §350.20(4).

reference is one to determine or one to perform a particular act, the JHO "shall have the same powers of a court in performing like function" except the power "to relieve himself of his duties, to appoint a successor or adjudge any person except a witness before him guilty of contempt." C.P.L.R. 4301. In the absence of the parties' consent, at the court's discretion, a JHO may determine (1) a cause of action or an issue where examination of a long account is required, or (2) any separately triable issue of damages that does not require a trial by jury. C.P.L.R. 4317. JHOs may also supervise, on behalf of the assigning judge, evidentiary disclosure, C.P.L.R. 3104, and are authorized to hear and report in tax certiorari proceedings to review real property assessments, N.Y. Real Prop. Tax Law §§ 700, 720.

Defendants contend that distinct from the JHOs described above, there are JHOs who are appointed pursuant to section 1690(1) of the New York Vehicle and Traffic Law and serve exclusively in the Nassau County Traffic and Parking Violations Agency (the "TPVA"), "a department of the Nassau county government" which is "operate[d] under the direction and control of the Nassau county executive. These "TPVA" JHOs have different qualifications and powers, do not go through the same selection and appointment process, and are employed by an agency that is a department of the Nassau County government. According to Defendants, "[t]he Unified Court System does not hire, fire or pay "TPVA" JHOs. The only role played by the Unified Court System is that the District Administrative Judge issues an annual administrative order to "approve and assign" – as opposed to hire or appoint – various individuals to serve as a TPVA JHO. Plaintiff, relying primarily on statements contained in the New York Court of Appeals decision in *Dolce v. Nassau County Traffic & Parking Violations Agency*, 7 N.Y.3d 492 (2006), contends that the TPVA is an arm of the District Court, that its JHOs must be appointed

9

pursuant to the Judiciary Law and the rules promulgated by the chief administrator, and its JHOs are, in fact, appointed by Administrative Judge.

## *Discussion*

### I. Standard

#### A. Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*,

477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will

bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). Finally, the Court notes that as a lawyer, Levine "cannot claim the special consideration which courts customarily grant to pro se parties." *Harbulak v. Suffolk County*, 654 F.2d 194, 198 (2d Cir. 1981).

B. <u>Motion for Reconsideration</u>

Plaintiff's motion for reconsideration is governed by Local Rule 6.3 which provides in pertinent part:

> A notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten (10) days after the court's determination of the original motion, or, in the case of a court order resulting in a judgment, within ten (10) days after entry of judgment.

Local Rule of the Southern and Eastern District of New York 6.3.

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Union,* 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

## II. Judicial Hearing Officers as Policymakers

While maintaining that the decision not to appoint Levine a JHO was based on the merits of his qualifications, Defendants move for summary judgment contending that, even if political affiliation did play a part in the denial of his application, the First Amendment was not violated because a JHO is a policymaker.

The Supreme Court has ruled that the First Amendment permits dismissals of policymakers because of their political affiliation, when the employer can establish that party affiliation is an appropriate requirement for the effective performance of the public office involved. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). The Second Circuit has identified eight pertinent factors to be considered in the policymaker analysis, including:

> whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of the policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Almonte v. City of Long Beach*, 478 F.3d 100, 110 (2d Cir. 2007) (quoting *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994)). These factors are not exhaustive and no one factor is always dispositive. *Id.* at 486. It is the job description or what the employee could do, rather than job performance or what the employee actually does, that controls the analysis. *See Gordon v. County of* Rockland, 110 F.3d 886, 888 (2d Cir. 1997); *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993). Whether a person is a policymaker is a question of law. *See Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2d Cir. 1998); *Gordon*, 110 F.3d at 888-889 (2d Cir. 1997).

Consideration of these factors reveal that a JHO is a policymaker and therefore exempted from First Amendment protection against political patronage dismissals.

First, JHOs are not protected by civil service law. Rather they are appointed for a one year term that may be renewed for a second year and are paid on a per diem basis. Second, JHOs have special expertise, both as an attorney, *see, e.g., Butler v. N.Y. State Dept. of Law*, 211 F.3d

739, 744 (2d Cir. 2000); *Adler v. Pataki*, 185 F.3d 35, 46 (2d Cir. 1999), and as one who previously served as a judge or justice. JHOs do not control others in terms of have an established staff to supervise. However, to the extent that in the course of performing their duties JHOs have "all the powers of a court in performing a like function," they do control attorneys, litigants and spectators in the courtroom.

As to the remaining factors, the Second Circuit has condensed them into "whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official." *Butler*, 211 F.3d at 744 (quoting *Gordon v. County of Rockland*, 110 F.3d at 890. Here, JHOs, in the course of performing their duties, whether civil or criminal, act "in the same manner as a court" and have "all the powers of a court performing a like function." N.Y. Crim. Pro. Law §§ 255.20, 350.20; C.P.L.R. 4301. JHOs therefore are empowered to act and speak on behalf of judges, who in New York, are themselves elected officials.

Consideration of the relevant factors leads this Court to conclude that JHOs are policymakers for First Amendment purposes.

This Court's conclusion that JHOs are policymakers comports with the decisions reached by those courts which have examined whether judicial or quasi-judicial officers are policymakers. For example, in *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988), one of the issues was whether judge *pro tempore* is a policymaking position to which political criteria could be applied. In concluding that a judge *pro tempore* is a policymaking, the Court wrote:

> A judge both makes and implements governmental policy.
> A judge may be suspicious of the police or sympathetic to them,
> stern or lenient in sentencing, and political debates rage about such
> questions. In most states judges are elected, implying that the
> office has a political component. Holders of the appointing

15

> authority may seek to ensure that judges agree with them on
> important jurisprudential questions. The Governor of Indiana was
> entitled to consider Krajewski's views about the role of judges - or
> even simply Krajewski's political affiliation- when making the
> appointment, just as the voters may consider these factors without
> violating the first amendment when deciding whether to retain
> Judge Krajewski in office. (We put aside all debate about whether
> recourse to politics in selecting judges is good ro bad; we are
> concerned only with the constraints the first amendment imposes
> on the way the State of Indiana prefers to organize its government.)
> What is true about the office of judge is true about the office of
> judge *pro tempore*. It is the same job; only the tenure of the
> officeholder differs. The regular judge holds office for four years;
> the judge *pro tempore* holds office at the pleasure of the regular
> judge. Since the disposition under *Elrod* and *Branti* depends on
> the duties of the office rather than the tenure of the incumbent, it
> follows that political beliefs may be the basis for the appointment
> of a judge *pro tempore.*

*Id*. at 770. *Accord Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993) (holding judges are policymakers "because their political beliefs influence and dictate their decisions on important jurisprudential matters"). *Cf. Gregory v. Ashcroft*, 501 U.S. 451 (1991) (holding state court judges are policymaking employees under the Age Discrimination Employment Act).

Similarly, in *Affrunti v. Zwirn*, 892 F. Supp. 451 (E.D.N.Y. 1995), *aff'd*, 100 F.3d 943, 1996 WL 53625 (2d Cir. 1996), the court concluded that members of a Town Board of Zoning Appeals, a "quasi-judicial body that occupies a central role in [the] implement[ation] of the Town['s] . . . zoning ordinance" are policymakers, not protected by the First Amendment against adverse employment action due to their political affiliations. *Id*. at 458. *Accord Pleva v. Norquist*, 195 F.3d 905 (7th Cir. 1999) (holding members of Milwaukee Board of Zoning Appelas to be a policymaker). *Cf. Walsh v. Heilman*, 472 F.3d 504 (7th Cir. 2006) (holding hearing officer, whose position was equivalent to what other states would call a city judge or

justice of the peace, is policymaker for First Amendment purposes); *Garretto v. Cooperman*, 510 F. Supp. 816 (S.D.N.Y. 1981), *aff'd*, 794 F.2d 676 (2d Cir. 1984) (holding New York State worker's compensation judge is a policymaker for purposes of *Elrod-Branti* and therefore denial of reappointment because of political affiliation did not violate the First Amendment).

New York State JHOs are policymakers and therefore exempted from First Amendment protection against political patronage appointments and dismissals. Accordingly, Defendants' motion for summary judgment is granted.

**III. The Motion for Reconsideration**

    A.    <u>The Application is Untimely</u>

Under the Local Rules, Plaintiff was required to move for reconsideration no later than October 3, 2006 – ten days after the Court's determination of the Motion.[6] He did not. Even if he did not receive a copy of the Memorandum and Order on the day it was filed, Plaintiff should have moved for reconsideration within ten (10) days of when he did receive it. According to the handwritten notation on the back of the first page of the copy of the September 19, 2006 Memorandum & Order Levine submitted with his motion papers, he received a copy of the decision from the Court's Pro Se Clerk on November 29, 2006. Even assuming that the clock

---

[6] There was no judgment as a result of the September 19, 2006 Memorandum and Order and, therefore, the portion of the Rule allowing a reconsideration motion to be made within ten days after of entry of judgment is inapplicable.

should start on November 29, 2006 and stop when he wrote to the Court seeking leave to move to reargue,[7] Plaintiff's application is untimely.

An extension of time to file a motion for reconsideration under Local Rule 6.3 is not forbidden by Federal Rule of Civil Procedure 6(b) and, therefore, a district court has discretion to grant such an extension. *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 403 (2d Cir. 2000); *Weisner v. 321 West 16th St. Assocs.,* 2000 WL 1585680, at * 2 (S.D.N.Y. Oct. 25, 2000). At no time did Levine request such an extension of time. While the Court is cognizant of the fact that Levine is proceeding pro se, Levine is also a practicing attorney. Practicing attorneys who choose to represent themselves cannot claim the special considerations normally afforded to pro se litigants. *See Harbulak v. Suffolk County*, 654 F.2d at 198.

In sum, Levine's Motion for Reconsideration made pursuant to Local Rule 6.3 is untimely. However, assuming *arguendo* that the application is deemed timely, as set forth below the Motion for Reconsideration is denied.

B.    The Proposed Amendment of the Complaint Would be Futile

The Court has reviewed the Plaintiff's arguments in great detail, and concludes that Plaintiff's motion does not point out controlling decisions or data the Court overlooked.[8] Rather,

---

[7] Rule 2(A) of this Court's Individual Practice Rules requires the submission of a pre-motion conference letter seeking leave to file certain motions. However, motions for reconsideration pursuant to Local Rule 6.3 are specifically excluded from that requirement. *See* Individual Practice Rule 2(A)(v).

[8] Levine contends that the Court overlooked the allegation in paragraphs 31a to 31e in the Proposed Second Amended Complaint in holding the claims against McCabe were time-barred. The allegations were not, however, overlooked. Rather, none of these allegations support an inference that McCabe took action in the years 2000, 2001, 2002 or 2003 to deprive Levine of a Judicial Hearing Officer Appointment.

18

Levine points to "new" evidence which he contends demonstrates that, contrary to this Court's prior decision, Defendants do have the power to appoint him to the TPVA. While it is unclear whether and why this "new" evidence was unavailable at the time of the prior motion, the Court shall, in any event, address it.

The allegedly new evidence is a document entitled "State of New York County of Nassau Administrative Order" and dated January 17, 2006. It reads, in pertinent part as follows:

> Pursuant to the authority vested in me by Section 1690(1) of the Vehicle and Traffic Law and Section 350.20(5) of the Criminal Procedure Law, I hereby approve and assign the following Village Justices and/or retired Judges to serve as Judicial hearing Officers in the Nassau County Traffic and parking Violations Agency towards its statutory purpose to assist the Nassau County District Court in the disposition of parking and traffic violations in accordance with General Municipal law 370(1), 371(2). The term of this assignment is effective retroactively to January 1, 2006 and shall expire on December 31, 2006.

Pl.'s Ex. M4. The document then lists sixteen individuals and is purportedly signed by the Honorable Anthony Marano, Administrative Judge, Nassau County.

Levine contends that this document, together with dicta contained in *Dolce v. Nassau County Traffic and Parking Violations Agency*, 7 N.Y.3d 492 (2006), demonstrates that Defendant McCabe did in fact have the power to appoint him as a JHO to the TPVA. Even assuming, however, that McCabe did have the authority to appointment Levine to the TPVA, allowing Levine to amend his complaint would remain futile. As detailed above, even if McCabe had the power to appoint Levine to the TPVA and refused to do so because of Levine's political affiliation, the First Amendment is not violated because JHOs are policymakers.

Accordingly, Levine's motion for reconsideration is denied.

*Conclusion*

In sum, the Court GRANTS Defendants' motion for summary judgment and DENIES Levine's motion for reconsideration. The Clerk of Court is directed to serve a copy of this Memorandum and Order on the Plaintiff and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York /s/
      December 17, 2007                     Denis R. Hurley
                                          United States Senior District Judge